IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SOROLA BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| vs. | ) | |
| | ) | FILE No. |
| JAI-MART INC. AND GJN L.L.C., | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

COMES NOW, SOROLA BROWN, by and through the undersigned counsel, and files this, her Complaint against Defendants, JAI-MART INC. AND GJN L.L.C., pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA") and the ADA's Accessibility Guidelines, 28 C.F.R. Part 36 ("ADAAG").  In support thereof, Plaintiff respectfully shows this Court as follows:

## JURISDICTION

1.      This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims pursuant to 42 U.S.C. § 12181 *et seq.*, based upon Defendants' failure to remove physical barriers to access and violations of Title III of the ADA.

## PARTIES

2.      Plaintiff SOROLA BROWN (hereinafter "Plaintiff") is, and has been at all times relevant to the instant matter, a natural person residing in Houston, Texas (Harris County).

1

3.     Plaintiff is disabled as defined by the ADA.

4.     Plaintiff is required to traverse in a wheelchair and is substantially limited in performing one or more major life activities, including but not limited to: walking, standing, grabbing, grasping and/or pinching.

5.     Plaintiff uses a wheelchair for mobility purposes.

6.     Plaintiff is also an independent advocate of the rights of similarly situated disabled persons and is a "tester" for the purpose of enforcing Plaintiff's civil rights, monitoring, determining and ensuring whether places of public accommodation are in compliance with the ADA.  Her motivation to return to a location, in part, stems from a desire to utilize ADA litigation to make Plaintiff's community more accessible for Plaintiff and others; and pledges to do whatever is necessary to create the requisite standing to confer jurisdiction upon this Court so an injunction can be issued correcting the numerous ADA violations on this property, including returning to the Property as soon as it is accessible ("Advocacy Purposes").

7.     Defendant, JAI-MART INC. (hereinafter "JAI-MART INC.") is a Texas company that transacts business in the State of Texas and within this judicial district.

8.     Defendant may be properly served with process via its registered agent for service, to wit:  Jagdish Singh, Registered Agent, 14711 South Main Street, Suite A, Houston, TX  77035.

9.     Defendant, GJN L.L.C. (hereinafter "GJN L.L.C.") is a Texas limited liability corporation that transacts business in the State of Texas and within this judicial district.

10.     Defendant may be properly served with process via its registered agent for service, to wit:  Jaswant Singh, Registered Agent, 1615 Crescent Oak Drive, Missouri City, TX  77459.

## FACTUAL ALLEGATIONS

11.     On or about November 2, 2018, Plaintiff was a customer at "Main Mart," a business located at 14711 South Main Street, Houston, TX  77035, referenced herein as the "Main Mart."

12.     JAI-MART INC. is the lessee or sub-lessee of the real property and improvements that are the subject of this action.

13.     GJN L.L.C. is the owner or co-owner of the real property and improvements that Main Mart is situated upon and that is the subject of this action, referenced herein as the "the Property."

14.     Plaintiff lives 10 miles from Main Mart and the Property.

15.     Plaintiff's access to the business(es) located at 14711 South Main Street, Houston, TX   77035, Harris County Property Appraiser's parcel number 0430610000076 ("the Property"), and/or full and equal enjoyment of the goods, services, foods, drinks, facilities, privileges, advantages and/or accommodations offered therein were denied and/or limited because of her disabilities, and she will be denied and/or limited in the future unless and until Defendants, JAI-MART INC. AND GJN L.L.C., are compelled to remove the physical barriers to access and correct the ADA violations that exist at Main Mart and the Property, including those set forth in this Complaint.

16.     Plaintiff has visited Main Mart and the Property at least once before as a

customer and advocate for the disabled.  Plaintiff intends on revisiting Main Mart and the

Property within six months or sooner, as soon as the barriers to access detailed in this

Complaint are removed and Main Mart and the Property is accessible again.  The purpose

of the revisit is to be a regular customer, to determine if and when Main Mart and the

Property is made accessible and to maintain standing for this lawsuit for Advocacy

Purposes.

17.     Plaintiff intends on revisiting Main Mart and the Property to purchase

goods and/or services as a regular customer living in the near vicinity as well as for

Advocacy Purposes, but does not intend to re-expose herself to the ongoing barriers to

access and engage in a futile gesture of visiting the public accommodation known to

Plaintiff to have numerous and continuing barriers to access.

18.     Plaintiff travelled to Main Mart and the Property as a customer and as an

independent advocate for the disabled, encountered the barriers to access at Main Mart

and the Property that are detailed in this Complaint, engaged those barriers, suffered legal

harm and legal injury, and will continue to suffer such harm and injury as a result of the

illegal barriers to access present at Main Mart and the Property.

## COUNT I
## VIOLATIONS OF THE ADA AND ADAAG

19.     On July 26, 1990, Congress enacted the Americans with Disabilities Act 42

U.S.C. § 12101 *et seq*.

20.     Congress found, among other things, that:

(i)     some 43,000,000 Americans have one or more physical or mental
        disabilities, and this number is increasing as the population as a

4

whole is growing older;

(ii)    historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

(iii)    discrimination against individuals with disabilities persists in such critical areas as employment, housing public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

(iv)    individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser service, programs, activities, benefits, jobs, or other opportunities; and

(v)    the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.

42 U.S.C. § 12101(a)(1) - (3), (5) and (9).

21.    Congress explicitly stated that the purpose of the ADA was to:

(i)    provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(ii)    provide a clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

* * * * *

(iv)    invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in

order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b)(1)(2) and (4).

22.     The congressional legislation provided places of public accommodation one and a half years from the enactment of the ADA to implement its requirements.

23.     The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181; 28 C.F.R. § 36.508(a).

24.     Main Mart is a public accommodation and service establishment.

25.     The Property is a public accommodation and service establishment.

26.     Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice and Office of Attorney General promulgated federal regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

27.     Public accommodations were required to conform to these regulations by January 26, 1992 (or by January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181 *et seq.*; 28 C.F.R. § 36.508(a).

28.     Main Mart must be, but is not, in compliance with the ADA and ADAAG.

29.     The Property must be, but is not, in compliance with the ADA and ADAAG.

30.     Plaintiff has attempted to, and has to the extent possible, accessed Main Mart and the Property in her capacity as a customer of Main Mart and the Property as well as an independent advocate for the disabled, but could not fully do so because of her

6

disabilities resulting from the physical barriers to access, dangerous conditions and ADA violations that exist at Main Mart and the Property that preclude and/or limit her access to Main Mart and the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

31.     Plaintiff intends to visit Main Mart and the Property again in the very near future as a customer and as an independent advocate for the disabled, in order to utilize all of the goods, services, facilities, privileges, advantages and/or accommodations commonly offered at Main Mart and the Property, but will be unable to fully do so because of her disability and the physical barriers to access, dangerous conditions and ADA violations that exist at Main Mart and the Property that preclude and/or limit her access to Main Mart and the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

32.     Defendants, JAI-MART INC. AND GJN L.L.C., have discriminated against Plaintiff (and others with disabilities) by denying her access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of Main Mart and the Property, as prohibited by, and by failing to remove architectural barriers as required by, 42 U.S.C. § 12182(b)(2)(A)(iv).

33.     Defendants, JAI-MART INC. AND GJN L.L.C., will continue to discriminate against Plaintiff and others with disabilities unless and until Defendants, JAI-MART INC. AND GJN L.L.C., are compelled to remove all physical barriers that

exist at Main Mart and the Property, including those specifically set forth herein, and make Main Mart and the Property accessible to and usable by Plaintiff and other persons with disabilities.

34.    A specific list of unlawful physical barriers, dangerous conditions and ADA violations which Plaintiff experienced and/or observed, or was made aware of prior to the filing of this Complaint, that precluded and/or limited Plaintiff's access to Main Mart and the Property and the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of Main Mart and the Property include, but are not limited to:

**ACCESSIBLE ELEMENTS:**

(i)     The actionable mechanisms on the gas pumps are at a height exceeding 54 (fifty-four) inches from the finished floor in violation of Section 308.3.2 of the 2010 ADAAG standards. This violation made it difficult for Plaintiff to properly transact business at the Texaco.

(ii)    The access aisle to the accessible parking space is not level due to the presence of a ramp in the access aisle in violation of Section 502.4 of the 2010 ADAAG standards. This violation made it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property.

(iii)   The accessible parking space is not level due to the presence of ramp side flares in the accessible parking space in violation of Section 502.4 of the 2010 ADAAG standards. This violation made it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property.

(iv)    The accessible parking space sign is not at the proper height in violation of Section 502.6 of the 2010 ADAAG standards. This violation made it difficult for Plaintiff to locate an accessible parking space.

(v)    Due to a policy of not having parking stops situated in a manner which would prevent the "nose" of a vehicle from extending into the exterior accessible route, there are exterior accessible routes with clear widths of less than 36 inches when a vehicle parks in parking spaces directly adjacent to the exterior sidewalk accessible route in violation of section 403.5.1 and 502.7 of the 2010 ADAAG standards.

(vi)    The vertical reach to the frozen drink dispensers inside Main Mart exceeds the maximum allowable height of 48 (forty-eight) inches above the finish floor or ground in violation of Section 308.3.1 of the ADAAG standards. This violation made it difficult for Plaintiff to property utilize public features of the Texaco.

(vii)    The interior of Main Mart has sales and services counters lacking any portion of the counter that has a maximum height of 36 (thirty-six) inches from the finished floor in violation of Section 904.4 of the 2010 ADAAG standards, all portions of the sales and service counter exceed 36 (thirty-six) inches in height from the finished floor. This violation made it difficult for Plaintiff to properly transact business at the Main Mart.

(viii)    Due to a policy of maximizing product placement, the interior of the Main Mart has walking surfaces lacking a 36 (thirty-six) inch clear width in

violation of Section 403.5.1 of the 2010 ADAAG standards. This violation made it difficult for Plaintiff to properly utilize public features at the Texaco.

(ix)     The door to the restroom at the Property lacks a proper minimum maneuvering clearance, due to a policy of placing a trash receiptical closely adjacent to the door hardware in violation of Section 404.2.4 of the 2010 ADAAG standards.   This violation made it difficult and dangerous for Plaintiff to access the interior of the rest room.

(x)      The door leading to the restroom area has improper hardware in violation of Section 309.4 of the 2010 ADAAG standards. This violation made it difficult for Plaintiff to access the restroom.

(xi)     There are operable items that are located outside of the minimum reach ranges required by Section 308 of the 2010 ADAAG standards. Specifically, there is a button that must be pushed to unlock the door to the restroom area that is too high. This made it difficult for Plaintiff and/or any disabled individual to safely utilize the restroom facilities.

(xii)    Defendants fail to adhere to a policy, practice and procedure to ensure that all facilities are readily accessible to and usable by disabled individuals.

**RESTROOMS**

(i)      The accessible toilet stall door is not self-closing and violates Section 604.8.2.2 of the 2010 ADAAG standards. This made it difficult for the Plaintiff to safely utilize the restroom facilities.

10

(ii)     The height of coat hook located in accessible restroom stall is above 48 (forty-eight) inches from the finished floor in violation of Section 308.2.1 of the 2010 ADAAG standards. This made it difficult for Plaintiff to utilize the restroom facilities.

(iii)    The grab bars/handrails are not positioned in accordance with Sections 609.4 and 604.5 of the 2010 ADAAG standards. This made it difficult for Plaintiff to safely utilize the restroom facilities.

(iv)    The distance of the centerline of the toilet is not adequately positioned from the side wall or partition positioning in violation of Section 604.2 of the 2010 ADAAG standards. The toilet is approximately three (3) feet from the adjacent wall.   This made it difficult for Plaintiff to safely utilize the restroom facilities.

(v)     The door hardware of the bathroom stalls has operable parts which require tight grasping, pinching or twisting of the wrist in violation of Section 309.4 of the 2010 ADAAG standards. This made it difficult for Plaintiff to utilize the restroom facilities.

(vi)    Restrooms have a pedestal sink with inadequate knee and toe clearance in violation of Section 306 of the 2010 ADAAG standards. This made it difficult for Plaintiff to safely utilize the restroom facilities.

(vii)   The controls on the faucets require pinching and turning of the wrists in violation of Section 309.4 of the 2010 ADAAG standards. This made it

difficult for Plaintiff and/or any disabled individual to utilize the restroom facilities.

(viii)   The restroom lacks signage in compliance with Sections 216.8 and 703 of the 2010 ADAAG standards. This made it difficult for Plaintiff and/or any disabled individual to locate accessible restroom facilities.

(ix)   The restrooms lack proper door hardware in violation of Section 404.2.7 of the 2010 ADAAG standards. This made it difficult for Plaintiff and/or any disabled individual to utilize the restroom facilities.

35.   The violations enumerated above may not be a complete list of the barriers, conditions or violations encountered by Plaintiff and/or which exist at Main Mart and the Property.

36.   Plaintiff requires an inspection of Main Mart and the Property in order to determine all of the discriminatory conditions present at Main Mart and the Property in violation of the ADA.

37.   The removal of the physical barriers, dangerous conditions and ADA violations alleged herein is readily achievable and can be accomplished and carried out without significant difficulty or expense. 42 U.S.C. § 12182(b)(2)(A)(iv); 42 U.S.C. § 12181(9); 28 C.F.R. § 36.304.

38.    All of the violations alleged herein are readily achievable to modify to bring Main Mart and the Property into compliance with the ADA.

39.   Upon information and good faith belief, the removal of the physical barriers

and dangerous conditions present at Main Mart and the Property is readily achievable because the nature and cost of the modifications are relatively low.

40.    Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at Main Mart and the Property is readily achievable because Defendants have the financial resources to make the necessary modifications.

41.    Upon information and good faith belief, Main Mart and the Property have been altered since 2010.

42.    In instances where the 2010 ADAAG standards do not apply, the 1991 ADAAG standards apply, and all of the alleged violations set forth herein can be modified to comply with the 1991 ADAAG standards.

43.    Plaintiff is without adequate remedy at law, is suffering irreparable harm, and reasonably anticipates that she will continue to suffer irreparable harm unless and until Defendants, JAI-MART INC. AND GJN L.L.C., are required to remove the physical barriers, dangerous conditions and ADA violations that exist at Main Mart and the Property, including those alleged herein.

44.    Plaintiff's requested relief serves the public interest.

45.    The benefit to Plaintiff and the public of the relief outweighs any resulting detriment to Defendants, JAI-MART INC. AND GJN L.L.C.

46.    Plaintiff's counsel is entitled to recover its reasonable attorney's fees and costs of litigation from Defendants, JAI-MART INC. AND GJN L.L.C., pursuant to 42 U.S.C. §§ 12188 and 12205.

47.    Pursuant to 42 U.S.C. § 12188(a), this Court is provided authority to grant

injunctive relief to Plaintiff, including the issuance of an Order directing Defendants, JAI-MART INC. AND GJN L.L.C., to modify Main Mart and the Property to the extent required by the ADA.

WHEREFORE, Plaintiff prays as follows:

(a)     That the Court find Defendant, JAI-MART INC., in violation of the ADA and ADAAG;

(b)     That the Court find Defendant, GJN L.L.C., in violation of the ADA and ADAAG;

(c)     That the Court issue a permanent injunction enjoining Defendants, JAI-MART INC. AND GJN L.L.C., from continuing their discriminatory practices;

(d)     That the Court issue an Order requiring Defendants, JAI-MART INC. AND GJN L.L.C., to (i) remove the physical barriers to access and (ii) alter the Main Mart and the Property to make it readily accessible to and useable by individuals with disabilities to the extent required by the ADA;

(e)     That the Court award Plaintiff her reasonable attorneys' fees, litigation

expenses and costs; and

(f)     That the Court grant such further relief as deemed just and equitable in light

of the circumstances.


Dated: February 20, 2019.  Respectfully submitted,

/s/  Douglas S. Schapiro
Douglas S. Schapiro
*Attorney-in-Charge for Plaintiff*
Southern District of Texas ID No. 3182479
The Schapiro Law Group, P.L
7301-A W. Palmetto Park Rd., #100A
Boca Raton, FL 33433
Tel: (561) 807-7388
Email: schapiro@schapirolawgroup.com